IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANK ANTHONY BALDIZAN,

    Petitioner,                      No. CIV S-05-1203 MCE GGH P

    vs.

EDWARD S. ALAMEIDA,

    Respondent.                  FINDINGS AND RECOMMENDATIONS

    _____/

*Introduction and Summary*

    Petitioner was charged with murder but convicted of manslaughter with the enhancement that he personally used a firearm in the commission of the manslaughter offense.[1] In a different count, he was charged with willfully and maliciously firing a weapon at an inhabited dwelling causing death with the added enhancement that petitioner personally discharged a firearm in the commission of this offense.[2] It so happens under California law that the dwelling offense and personal discharge resulted in a 30 year to life cumulative sentence, but the manslaughter and personal use charge only with a cumulative 10 year sentence. Petitioner

---

[1] Cal. Penal Code §§ 192(a), 12022.5(a)(1).

[2] Cal. Penal Code §§ 246, 12022.53(d).

views this result as perverse, and attacks it in several ways.

While there is some logic to petitioner's position in the abstract, it lacks legal validity in this federal habeas corpus action governed by AEDPA. The petition should be denied.

*Issues*

1. The jury was improperly instructed on the mental element under California Penal Code § 246, shooting into an inhabited dwelling;

2. Lack of due process in connection with being sentenced on a "lesser" crime to a sentence in excess of that which could be imposed on the greater offense (several theories);

3. The sentence resulted in cruel and unusual punishment.

*Facts*

The facts set forth in the opinion of the California Court of Appeal correctly set the backdrop for the issues herein:

> During the night of April 8, 2000, while attending a party at the residence of Raymond Amaro, an argument developed between two of defendant's girlfriends. The girls, defendant, and several others, including Ruben Delatorre, ended up in a nearby parking lot. Delatorre and defendant had words, Delatorre struck defendant and a fight ensued. Defendant, who had not fared well in the fight, got into a car and as it drove off he said that he would be back.
>
> Defendant obtained a handgun, returned to the Amaro residence, and fired a shot which killed Delatorre as the latter stood near the front door inside the home. Troy Cunningham testified that while defendant was standing outside of Amaro's home, defendant called to Delatorre to come outside and continue the fight. Delatorre refused, stating he knew that defendant had a gun. As the witness walked to the bathroom, he heard a shot and returned to find Delatorre lying on the floor.
>
> Defendant testified, claiming that following the fight in the parking lot, Delatorre had threatened defendant and his family. FN3. Defendant obtained the gun and returned to Amaro's residence intending only to use the gun to scare Delatorre, not to fire it or kill him. However, the gun accidentally discharged when defendant was grabbed from behind by his friend Walter Johnson. Johnson denied being near defendant or grabbing him at the time of the shooting.
>
> FN3. In addition to his girlfriends, defendant had a wife and two children with whom he was living at the time of the killing.

People v. Baldizan, 2004 WL 161497 (Cal. App. 2004).

*Discussion*

    A.  **AEDPA Standards**

The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court

authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 10, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

B. **State Law and Federal Habeas**

Issues abound in this case about the interpretation of state law by state courts and the resultant binding effect of that interpretation in federal court. Petitioner cannot contest here his allegations that the state court in his case, or state courts in general, are erroneously interpreting state law. Estelle v. McGuire, 502 U.S. 67-68, 112 S.Ct. 475 (1991). Nor can petitioner assert that he has a liberty interest in the "correct" interpretation of state law. Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) (petitioner cannot transform a state law issue into a federal claim by claiming "due process' error). The one exception to the above rules exists where the state court has used a patently incorrect interpretation as a subterfuge to avoid the federal issues. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989).

C. **The Jury Was Improperly Instructed on the Mental Element Under California Penal Code Section 246, Shooting Into an Inhabited Dwelling**

Petitioner challenges the jury instruction here in that petitioner insists that the "willfulness" required by Cal. Penal Code § 246[3] attaches to willfully shooting *at the house* as well as willfully shooting the weapon itself. Petitioner's jury was instructed that only the shooting of the weapon per se had to be intentional or "willful." See CALJIC 1.20  While petitioner's argument is not without its grammatical logic, the California courts have found otherwise. The Third District Court of Appeal in this case held:

> Relying on People v. Garcia (2001) 25 Cal.4th 744, 107 Cal.Rptr.2d 355, 23 P.3d 590, defendant contends that CALJIC No. 1.20 as given by the court did not correctly define "willfully" for purposes of section 246. We disagree.
> Insofar as is relevant to the alleged misinstruction, the court informed the jury as follows:
>
> "Every person who willfully and unlawfully and maliciously discharges a firearm at an inhabited dwelling house is guilty of the crime of shooting at an inhabited dwelling house in violation of Penal Code section 246.[] ... In order to prove this crime, each of the following elements must be proved:
> "One, a person unlawfully discharged a firearm at an inhabited dwelling house and, two, the discharge of the firearm was willful and malicious.
> "The word ''willfully' when applied to the intent with which an act is done means with a purpose of willingness to commit the act in question.
> "The word 'willfully' does not require an intent to violate the law or injure another, or to acquire any advantage."
>
> The shortcoming of the instruction on willfulness, according to defendant, consists of its failure to add "that the defendant must know that he was creating a dangerous situation by shooting at an inhabited dwelling house as opposed to shooting to scare a person, or[,] as counsel argued[,] just knowing he was shooting." No such addition was required.
>
> In People v. Garcia, supra, 25 Cal.4th 744, 107 Cal.Rptr.2d 355, 23 P.3d 590, the defendant was charged with willful failure to register as a sex offender in violation of section 290, subdivisions (a)(1) and (g)(2). The court gave the same instruction on the meaning of "willfully" as it gave in the present case. (People v. Garcia, supra, at p. 751, 107 Cal.Rptr.2d 355, 23 P.3d 590.)Noting that "[l]ogically one

---

[3] Cal. Penal Code § 246 provides in pertinent part: "Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building...is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for three, five, or seven years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year."

> cannot purposefully fail to perform an act without knowing what act is required to be performed," the court concluded that section 290 required that the defendant have actual knowledge of the duty to act. (Id. at p. 752, 107 Cal.Rptr.2d 355, 23 P.3d 590.) However, the court also made clear that its analysis was based upon the circumstance of "a failure to act," as opposed to commission of "affirmative acts." (Ibid.) Because the present case involves an affirmative act, the Garcia analysis is inapplicable.
>
> A violation of section 246 is a general intent crime, and defendant does not contend otherwise. (See People v. Watie (2002) 100 Cal.App.4th 866, 879, 124 Cal.Rptr.2d 258.) "General criminal intent ... requires no further mental state beyond willing commission of the act proscribed by law." (People v. Sargent (1999) 19 Cal.4th 1206, 1215, 81 Cal.Rptr.2d 835, 970 P.2d 409.) Consequently, CALJIC No. 1.20 accurately describes the intent applicable in proof of a violation of section 246, and no further definition was required.

People v. Baldizan, 2004 WL 161497 *4

See also People v. Jischke, 51 Cal. App. 4th 552, 556, 59 Cal. Rptr. 2d 269 (1996) also finding that the defendant in shooting a gun at his floor did not have to hold an intent that he willfully fired into the bottom dwelling; an intent to shoot the weapon was sufficient.

As discussed above, the interpretation of state law is binding unless the state courts are simply avoiding federal law by an arbitrary interpretation of their own law. In addition, the federal courts must apply the law as declared by intermediate appellate courts unless it is clear that the state supreme court would not hold as the intermediate court held. Ryman v. Sears, Roebuck & Co., 505 F.3d 993, 995 (9th Cir. 2007).

Stretch as he might, petitioner cannot avoid these principles. It will not do to argue that a liberty interest is involved in the "correct" interpretation of § 246; the state courts define the correct interpretation. The federal courts are not entitled to make their own de novo interpretation of state law by claiming a federal liberty interest is involved. A liberty interest, if created at all, is, of course, dependent on the state law from which the liberty interest arises.

Moreover, petitioner's argument that the defendant is entitled to have the jury instructed with his theory of the defense has never been interpreted to mean that the defendant gets to make his own determination of what the law is. Such a criminal law system where the defendant gets to "make" state law fit his defense would be perverse and chaotic.

The claim should be denied.

D. **Lack of Due Process in Connection with Being Sentenced on a "Lesser" Crime to a Sentence in Excess of That Which Could Be Imposed on the Greater Offense (Several Theories)**

In general terms, the crime of firing a weapon at an inhabited dwelling is less serious than being convicted of manslaughter. This is seen by the penalties associated with each crime – a maximum term of 11 years for manslaughter Cal. Penal Code § 192, and a maximum term of 7 years for firing into an inhabited dwelling, and this latter offense can even be considered/prosecuted as a misdemeanor. Cal. Penal Code § 246. Petitioner was sentenced on the "lesser" crime, but when combined with the enhancement on the lesser crime, the punishment exceeded that of manslaughter with its enhancement. That is because the "personal use of a firearm" enhancement, Cal. Penal Code 12022.5, potentially enhances a manslaughter conviction by 3, 4, or 10 years, while the discharge of a firearm at an inhabited dwelling causing death enhancement is 25 years to life. Cal. Penal Code 12022.53(d).

Petitioner was sentenced on the manslaughter count to the middle term of 6 years with an enhancement of four years for a total of ten years. The sentence for the discharge of a firearm at an inhabited dwelling was the middle term of 5 years with an enhancement of 25 years to life for a total of 30 years to life. The sentence on the manslaughter count was stayed leaving in effect the 30 years to life sentence.

Petitioner understands that California law requires that petitioner be sentenced "under the *provision* that provides the longest term of imprisonment." Cal. Penal Code § 654 (emphasis added). What petitioner contests is whether the "provision" referenced includes the enhancement. The Court of Appeal held:

> Approximately two months prior to the filing of defendant's opening brief, the California Supreme Court rendered its decision in People v. Kramer (2002) 29 Cal.4th 720, 128 Cal.Rptr.2d 407, 59 P.3d 738, which rejected defendant's construction of section 654 and held that determination of the potentially longest term of imprisonment included enhancements. (Id. at p. 723, 128 Cal.Rptr.2d 407,

7

> 59 P.3d 738.) Consequently, the court herein correctly stayed the sentence on the voluntary manslaughter conviction.
>
> ***
>
> In his reply brief, defendant contends that People v. Kramer, supra, is not retroactive. He is wrong.
>
> "In determining whether a decision should be given retroactive effect, the California course undertake first a threshold inquiry, inquiring whether the decision established new standards or a new rule of law. If it does not establish a new rule or standards, but only elucidates and enforces prior law, no question of retroactivity arises. [Citations.] Neither is there any issue of retroactivity when we resolve a conflict between lower court decisions, or address an issue not previously presented to the courts. In all such cases the ordinary assumption of retrospective operation [citations] takes full effect." (Donaldson v. Superior Court (1983) 35 Cal.3d 24, 36-37, 196 Cal.Rptr. 704, 672 P.2d 110.)
>
> The pertinent amendment to section 654 was enacted in 1997 (Stats.1997, ch. 410, § 1), over two years prior to the homicide in this case. As noted in People v. Kramer, 29 Cal.4th at page 723, 128 Cal.Rptr.2d 407, 59 P.3d 738, regarding the amendment to section 654, "The statutory language seems clear. Nothing in that language excludes enhancements." Consequently, Kramer simply represents a run-of-the-mill resolution of conflict among lower appellate courts and, therefore, is retroactive.

People v. Baldizan, 2004 WL 161497 *2.

In addition to state law contentions, petitioner contends that federal Bouie[4] error occurred, i.e., that an unforseeable retroactive enlargement of the law was applied to petitioner's case when the Court of Appeal applied the holding of Kramer (a case decided after petitioner committed his crime). Respondent joins the issue, and argues that the Bouie principle was not violated. However, the undersigned does not reach the merits of the Bouie argument because the Ninth Circuit has unequivocally held that Bouie is limited to substantive criminal law and *not* changes in sentencing schemes.

> "[i]n United States v. Newman, 203 F.3d 700, 703 (9th Cir.2000), we held that Bouie applied only to after-the-fact increases in the scope of criminal liability and not to retroactive sentence enhancements." Holgerson v. Knowles, 309 F.3d 1200, 1202 (9th Cir.2002) (emphasis added); FN4 [omitted] see also Webster v. Woodford, 369 F.3d 1062, 1069 (9th Cir.2004) (noting that "Bouie does not apply to sentencing schemes" and citing Newman). *Newman clearly held that Ninth*

---

[4]Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697 (1964).

*Circuit precedent limited <u>Bouie</u> to new interpretations of substantive criminal statutes.* 203 F.3d at 702.

<u>United States v. Dupas</u>, 419 F.3d 916, 920-921 (9th Cir. 2005) (emphasis added).

Thus, <u>Bouie</u> plays no part in the analysis of the change in California's method of sentencing, and more to the point, a state supreme court case (<u>Kramer</u>) allegedly expanding the meaning of that statutory sentencing change. Although the undersigned clearly believes that respondent has the better of the <u>Bouie</u> argument under AEDPA, i.e., whether the state appellate court unreasonably applied <u>Bouie's</u> forseeability rule, the fact of the matter is that the Supreme Court precedent of <u>Bouie</u> is not applicable at all to this sentencing scheme issue.[5]

### E. **Petitioner's Sentence Does Not Violate the Eighth Amendment**

Petitioner caused the death of another human being, but instead of being convicted of murder, he was convicted of manslaughter and enhancements as well as firing at an inhabited dwelling causing death with enhancements. Petitioner strives to view his situation as a comparative evaluation. He focuses on the penalties for manslaughter and use of a firearm (lighter) with those of firing at an inhabited dwelling causing death with personal use of a firearm (heavier). It is precisely the degree of dangerousness to human life of the firing at a dwelling offense, with enhancements, which motivated the Legislature to make the crime more serious than a manslaughter occurring anywhere. But on the bottom line, petitioner's questioning of the wisdom of disparately treating the two manslaughters is unavailing from an Eighth Amendment standpoint.

In assessing the Eighth Amendment issue here, one should view the entirety of the factual situation and entirety of the convictions. Petitioner was sentenced, after all

---

[5] Petitioner mistakes the mere clarification of a seemingly unambiguous statute with a substantive enlargement, or unexpected enlargement, of a statute. Aside from the fact that an intermediate appellate state court has determined that the <u>Kramer</u> case was simply clarifying a statute for which it believed a lower court had strayed from the simple interpretation, even looking at the matter under an AEDPA gloss, the state court did not unreasonably apply the <u>Bouie</u> principle.

enhancements, to an effective life in prison with the possibility of parole after 30 years for killing a person after shooting at a dwelling.[6]  While he could have received a lesser sentence for simply firing at a dwelling in another jurisdiction not employing California's enhancement sentencing scheme, or manslaughter occurring elsewhere with use of a firearm even in California, the undersigned is not aware of a Supreme Court case finding that the Eighth Amendment's proscription against cruel and unusual punishment is violated by a life with the possibility of parole sentence for what is essentially, in its entirety, a manslaughter-plus conviction.  Nor can any of the principles laid out by the Supreme Court in Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179 (2003); Lockyear v. Andrade, 538 U.S. 63, 123 S.CT. 1166 (2003), be described to find the state courts' affirmation of the sentence unreasonable.  Those cases involving life with the possibility of parole for non-violent, recidivist cases, emphasized that an Eight Amendment violation could only be made out for extreme sentences which were grossly disproportionate to the crime – a truly rare circumstance.  Even the pre-AEDPA case of Cocio v. Bramlett, 872 F.2d 889 (9th Cir. 1989), found no violation of the Eighth Amendment for a vehicular manslaughter conviction which resulted in a sentence of life imprisonment with the possibility of parole after 25 years.[7]  Clearly, the ability to find an Eighth Amendment violation did not get easier after AEDPA and Andrade/Ewing; petitioner's complaint here about gross disproportionality in his sentencing for a crime involving the death of another cannot withstand the slightest scrutiny.

---

[6] This is not a case where petitioner fired at an inhabited dwelling, and the only harm incurred was to the siding, sheetrock and an indoor appliance.  While petitioner could still have been sentenced to life imprisonment with the possibility of parole for this firing of a weapon, petitioner cannot argue these facts in his Eighth Amendment argument.  Petitioner killed a person.

[7] In Cocio, one factor in the Eighth Amendment assessment was the fact that Cocio was on probation at the time of the offense (conspiracy to commit burglary).  Petitioner herein was also on probation at the time of the manslaughter/firing at a dwelling for carrying a concealed weapon in his car.  Aside from the weapons charge, petitioner had also been convicted of burglary and battery charges, and had been involved in serious prison disciplinary violations.  Cocio is also on point in that part of the life sentence involved the enhancement of using a dangerous instrumentality (a car) in causing the death of another.

Pared to its essence, petitioner believes that the California Legislature made a mistake when it punished so more severely a manslaughter occurring after shooting at a dwelling than a manslaughter occurring elsewhere. However, the Eighth Amendment is not concerned with the wisdom of disparate sentence severity choices made by the Legislature when comparing one crime with another. The only Eighth Amendment issue is whether the sentence received by petitioner for the shooting-at-dwelling-causing-death charge violates the proscription against cruel and unusual punishment. It does not because "even" a manslaughter conviction occurring outside the confines of a dwelling resulting in life imprisonment would be upheld on an Eighth Amendment analysis.

*Conclusion*

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 06/10/08

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
bald1203.157